## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **CRANPARK, INC.,** | ) | **CASE NUMBER: 4:04CV1817** |
| | ) | |
| **Plaintiff,** | ) | **MAGISTRATE JUDGE** |
| | ) | **GEORGE J. LIMBERT** |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION  & ORDER** |
| **ROGERS GROUP, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court upon Defendant Rogers Group, Inc.'s ("Defendant")

Renewed Motion for Judgment as a Matter of Law, pursuant to Rule 50(b) of the Federal Rules

of Civil Procedure, and its alternative Motion for a New Trial filed pursuant to Rules 50(b) and

59 of the Federal Rules of Civil Procedure. ECF Dkt. #s 218, 219.  In its Renewed Motion for

Judgment as a Matter of Law, Defendant renews its contention that Plaintiff Cranpark, Inc.

("Plaintiff") lacks constitutional standing to sustain its promissory estoppel claim and also

asserts that James Sabatine engaged in illegal activity which rendered any promise or contract

made by Defendant unenforceable. ECF Dkt. #218. As a result, Defendant argues that the Court

must set aside the jury's verdict and enter judgment in favor of Defendant. *Id.* Alternatively, in

its Motion for a New Trial, Defendant contends that it is entitled to a new trial since the evidence

does not support Plaintiff's promissory estoppel claim and Plaintiff's damages award lacks legal

basis and is unsupported by the evidence. ECF Dkt. #219 at 1.  Plaintiff filed briefs in opposition

to Defendant's motions and Defendant filed its replies. ECF Dkt. #s 221, 222, 225, 226.

This matter is also before the Court upon Plaintiff's Motion for a Hearing. ECF Dkt. #223. Plaintiff views Defendant's Renewed Motion for Judgment as a Matter of Law as the improper procedure for resolving issues of subject-matter jurisdiction. *Id.* Plaintiff moves the Court to hold a hearing wherein all relevant evidence regarding Plaintiff's constitutional standing can be considered. *Id.* at 1. Defendant filed its opposition brief to Plaintiff's motion for a hearing. ECF Dkt. #231. No reply brief was filed.

Lastly, this matter is before the Court upon Plaintiff's Motion to Strike Defendant's renewed motion briefs. ECF Dkt. #227. Plaintiff argues that Defendant's "standing" and "illegal conduct" arguments were not raised in its original Motion for Judgment as a Matter of Law, so they cannot be raised now in its *Renewed* Motion for Judgment as a Matter of Law. *Id.* Thus, Plaintiff contends that Defendant's Renewed Motion Briefs should be stricken. *Id.* Defendant filed a brief in opposition to Plaintiff's Motion to Strike and Plaintiff filed a reply brief.  ECF Dkt. #231, 232.

For the reasons set forth below, the Court GRANTS Defendant's Renewed Motion for Judgment as a Matter of Law (ECF Dkt. #218), DEFERS RULING on Defendant's conditional Motion for a New Trial (ECF Dkt. #219), DENIES Plaintiff's Motion for a Hearing (ECF Dkt. #223), and DENIES Plaintiff's Motion to Strike (ECF Dkt. #227). Also, as a result of this ruling, the Court DENIES AS MOOT Plaintiff's Motion to Alter/Amend.  ECF Dkt. #201.

**I.      RELEVANT FACTUAL AND PROCEDURAL HISTORY**

Hardrives Paving & Construction, Inc. ("Hardrives") was an asphalt paving company founded by its owner, James Sabatine, in 1977. Trial Tr. at 236. With each passing year, Sabatine obtained larger jobs and steadily expanded his business. *Id.* at 237.  In 1998, Carbon

Limestone ("Carbon"), Hardrives's limestone supplier (and the largest limestone supplier in Northeastern Ohio and Western Pennsylvania), revealed that it would stop selling limestone to the public by year's end. *Id.* at 244. As a result, Hardrives needed a new supplier. *Id.*

Hardrives was the biggest limestone purchaser in the area and, thus, required a supplier that could meet its high demand at a competitive cost. Trial Tr. at 253-54. Defendant, an aggregate stone supplier with a limestone quarry near Sandusky, Ohio, emerged as a capable replacement. *Id.* at 51.  As a result, Hardrives and Defendant began discussions about a possible business arrangement: Defendant would establish a rail-fed distribution point in Youngstown, Ohio, while Hardrives would operate an asphalt plant there and purchase a specified minimum amount of Defendant's limestone. *Id.* at 97-98. Hardrives would also receive royalties on all non-Hardrives sales of Defendant's limestone. *Id.* at 190. On September 1, 1998, the companies met and outlined their discussions in a writing initialed by both parties. *Id.* at 119-25; ECF Dkt. #122-7.

Thereafter, the parties chose the Center Street site in Youngstown, Ohio for the proposed distribution point. Trial Tr. at 164-66.  With the location selected, Sabatine conferred with one of Defendant's salesmen about ordering a new asphalt plant for the site. *Id.* at 311-12. The salesman responded to Sabatine's plan by saying "great." *Id.* at 312. Sabatine subsequently paid $383,674 as a down payment for an asphalt plant which ultimately cost $1,534,696. *Id.* at 310.

In February 1999, the plant was ordered and on its way when Defendant informed Hardrives that it would no longer be pursuing the project. Trial Tr. at 314-15. Shocked by Defendant's reversal, Sabatine moved to salvage his and the company's efforts. *Id.* at 315, 325. Sabatine first spoke with Defendant, then with other limestone suppliers, but he could not attract

rail-fed limestone to the site. *Id.* at 325-26. After several years, Hardrives continued to lose money, so in March 2001, Sabatine sold Hardrives to the McCourt Construction Company ("McCourt") for $4.7 million. *Id.* at 330-31. In accordance with a term of the sale, Hardrives was required to change its name, so Hardrives became Cranpark, Inc., the plaintiff in this case.  *Id.* at 236. Sabatine remains the president. *Id.* at 235.

On September 8, 2004, Plaintiff filed a complaint against Defendant alleging breach of contract and promissory estoppel. ECF Dkt. #1. Nine years later, on November 18, 2013, a trial in this matter finally began. ECF Dkt. #181. Therein, the parties presented their cases, and at the close of evidence, Defendant orally moved for judgment as a matter of law. Trial Tr. at 641. Defendant contended, among other things, that insufficient evidence existed to support a finding that Plaintiff "was the proper party to this case." *Id.* at 641-42. The Court denied the motion. *Id.* at 643.

The Court subsequently submitted the case to the jury, and, on November 22, 2013, the jury returned a verdict in favor of Plaintiff on its promissory estoppel claim and awarded Plaintiff  damages in the amount of $15,600,000.00. ECF Dkt. #s 193, 195.

The parties thereafter filed a flurry of post-trial motions.  On December 4, 2013, Plaintiff filed a Motion to Alter/Amend Judgment.  ECF Dkt. #201.  Defendant filed a brief in opposition to Plaintiff's motion and Plaintiff filed a reply brief.  ECF Dkt. #208, 210.  On December 5, 2013, Defendant filed a Motion to Stay Execution of Judgment Pending Disposition of Post-Trial Motions.  ECF Dkt. #203.  Plaintiff filed a brief in opposition to Defendant's motion to stay execution of judgment without posting a bond.  ECF Dkt. #209.

After a hearing on the Motion to Alter/Amend Judgment and the Motion to Stay Execution of Judgment, the Court deferred ruling on Plaintiff's Motion to Alter/Amend Judgment and granted Defendant's Motion to Stay Execution upon Defendant posting a supersedeas bond in the amount of $15,600,000.00.  ECF Dkt. #214.  Defendant posted said bond on December 20, 2013 and the Court stayed execution of the judgment in this case pending the disposition of post-trial motions.  ECF Dkt. #217.

On December 30, 2013, Defendant filed the instant Renewed Motion for Judgment as a Matter of Law and Motion for New Trial.  ECF Dkt. #s 218, 219.  On January 20, 2014, Plaintiff filed responses to those motions.  ECF Dkt. #s 221, 223.  Plaintiff filed a Motion for Conference/Hearing on January 20, 2014 as well and filed a Motion to Strike Defendant's Renewed Motion Briefs on February 12, 2014.  ECF Dkt. #223, 227.  Defendant filed replies to Plaintiff's responses on February 6, 2014 and filed a response brief to Plaintiff's Motion for Conference/Hearing and Motion to Strike on March 3, 2014.  ECF Dkt. #s 225, 226, 231.

## II.  DEFENDANT'S RENEWED JUDGMENT AS A MATTER OF LAW

### A.  STANDARD OF REVIEW

Rule 50(b) of the Federal Rules of Civil Procedure provides that if a court does not grant a motion for judgment as a matter of law made after the close of all the evidence at trial and the party renews its request after a verdict is returned, the court may (1) allow the judgment to stand, (2) order a new trial, or (3) direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b). "Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but

only conclusion in favor of the moving party." *Balsley v. LFP, Inc*., 691 F.3d 747, 757 (6th Cir. 2012), citing *Barnes v. City of Cin*., 401 F.3d 729, 736 (6th Cir. 2005).  In its review, the Court cannot "reweigh the evidence or assess the credibility of witnesses" because the "review is restricted to the evidence that was admitted at trial." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir.2010) (citing *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir.2007) and Fed. Prac. & Proc. 2540 (3d ed.2008)).

The Sixth Circuit has held that in a diversity of citizenship case, a federal court applies the standard of review of the forum state, which in this case is Ohio.  *See Tompkins v. Crown Corr., Inc.*, 726 F.3d 830, 844 (6th Cir. 2013), citing *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006).; *K&T Enterprises, Inc. v. Zurich Ins*., 97 F.3d 171, 176 (6th Cir. 1996).  Under Ohio law, a motion for a directed verdict and for judgment notwithstanding the verdict under Rule 50(b) of the Ohio Rules of Civil Procedure tests the legal sufficiency of the evidence.  *Posin v. A.B.C. Motor Court Hotel, Inc*., 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976).  In reviewing  such a motion, if the trial court construes the evidence most strongly in favor of the plaintiff and finds "that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court must grant the motion and direct a verdict for the moving party as to the issue." *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 679, 693 N.E.2d 271 (1998), citing Ohio Civ.R. 50(A)(4).

In determining whether to grant or deny a Rule 50(B) motion pursuant to Ohio law, the trial court does not weigh the evidence or evaluate the credibility of the witnesses and must deny the motion "'if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions." *Id*.,

6

quoting *Strother v. Hutchinson*, 67 Ohio St.2d 282 284-285, 21 O.O. 3d 177, 178-179, 423

N.E.2d 467, 469 (1981)(citing *Kellerman v. J.S. Durig Co.*, 176 Ohio St. 320 [27 O.O.2d 241,

199 N.E.2d 562] (1964) and *Hawkins v. Ivy* , 50 Ohio St.2d 114, 115 [4 O.O.3d 243, 244, 363

N.E.2d 367, 368] (1977).

### B.    LAW AND ANALYSIS

The Constitution of the United States limits the jurisdiction of federal courts to actual

cases or controversies.  U.S. Const. Art. III, § 2.  In order to fulfill the case-or-controversy

requirement, a plaintiff must have standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-

61 (1992)("standing is an essential and unchanging part of the case-or-controversy requirement

of Article III."). A plaintiff must establish three elements in order to establish constitutional

standing: "(1) an injury in fact that  (2) was fairly traceable to the defendant's unlawful conduct

and  (3) a likelihood that the injury will be redressed by a favorable decision. *Schultz v. United

States,* 529 F.3d 343, 349 (6ᵗʰ Cir. 2008), quoting *Prime Media, Inc. v. City of Brentwood*, 485

F.3d 343, 349 (6ᵗʰ Cir. 2007).  As the party invoking federal jurisdiction, the plaintiff bears the

burden of proof as to standing.  *Lujan,* 504 U.S. at 561. Specifically, the plaintiff must support

each element of standing "with the manner and degree of evidence required at the successive

stages of litigation." *Id.* Thus, "at the final stage, those facts (if controverted) must be 'supported

adequately by the evidence adduced at trial.'" *Id.* (quoting *Gladstone, Realtors v. Vill. of

Bellwood*, 441 U.S. 91, 115, n. 31 (1979)).

Even if a plaintiff ostensibly meets its burden of proof in establishing these three

elements, a plaintiff lacks standing where it has sold its cause of action to a third party. *See, e.g.,

Sanford Inv. Co. v. Ahlstrom Mach Holdngs, Inc.* 198 F.3d 415, 420 (3d Cir. 1999); *AtlantiGas*

*Corp. v. Columbia Gas Transmission Corp.*, 210 Fed. App'x 244, 250 (4th Cir. 2006). By selling its claim, a plaintiff's injury can no longer be "redressed by a favorable decision." *See Lujan*, 504 U.S. at 561. Thus, even though a party may have originally suffered an injury in fact, if that party subsequently sells its claim for that injury, the party no longer has an injury that can be redressed by a favorable decision and will not satisfy the redressability element of standing if it brings suit.  *Id.*  A contracting party that has assigned its contract rights to a third party does not have standing to enforce that contract.

Such potential defects in subject-matter jurisdiction cannot be waived and may be raised at any time in the proceeding. *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002); *see also Douglas v. E.G. Baldwin & Assoc., Inc.*, 150 F.3d 604. 606 (6th Cir. 1998) ("Nothing is to be more jealously guarded by a court than its jurisdiction.") (internal quotation marks omitted), *abrogated on other grounds by Thomas v. Miller*, 489 F.3d 293 (6th Cir. 2007). Courts have previously considered whether a party owns the right to a claim to be an example of such a standing issue (as opposed to a real party in interest issue) that cannot be waived. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009); *Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings, Inc.*, 198 F.3d 415, 420 (3d Cir. 1999); *AtlantiGas*, 210 App'x at 250.

In the instant case, Defendant renews its motion for judgment as a matter of law following a jury verdict in favor of Plaintiff. ECF Dkt. #218. Defendant contends that this Court improperly denied its original motion for judgment as a matter of law. *Id.* at 1. In support of its motion, Defendant points to two issues: (1) Plaintiff's lack of constitutional standing; and (2) Plaintiff's participation in illegal activities. *Id.*

Upon review, the Court holds that Plaintiff failed to meet its constitutional burden of proving standing at trial.  Therefore, the Court grants Defendant's motion for judgment as a matter of law on this issue.  ECF Dkt. #218 .  The Court denies Defendant's motion as to the second assertion and finds that the jury acted reasonably in finding that Sabatine's criminal convictions did not render Hardrives's promise with Defendant unenforceable.

## 1. **Constitutional Standing**

As to constitutional standing, Sabatine testified at trial that he "sold the entire company's assets" to McCourt in 2001. Trial Tr. 330:4-9.  He reiterated this multiple times throughout his testimony, including during cross-examination:

> Q. Okay. So because they were so big and they have so many plants, you thought that what they were really buying from you is noncompetition, they wanted you out of the business, correct?
>
> A. They wanted the plant. *They wanted my – everything*, my name. They wanted the – they wanted my assets. They wanted all my contracts. They wanted – all my employees were probably the biggest thing, because they took just about every – most of our employees. So they had a ready-made company, they came in and took over my contracts.

Trial Tr. 365:18-66:2 (emphasis added). Defendant's counsel subsequently pushed Sabatine to reconfirm this admission:

> Q. Okay. *So they basically bought everything to get you out of the business, correct?*
>
> A. I mean, I don't know why exactly they bought me. I mean, I'm – to the best of my ability, I'm giving you the answer that I think they bought me.
>
> Q. Okay. *But they bought everything; fair enough?*
>
> A. *Fair enough.*

*Id.* at 366:17-23 (emphasis added).

9

Plaintiff suggests that a reasonable jury could have found otherwise based upon the evidence adduced at trial—which, if true, would compel the Court to deny the Rule 50(b) motion. ECF Dkt. #223. As evidence, Plaintiff points to a section of Sabatine's testimony which Plaintiff asserts contradicts his previous statement that he sold "everything:"

> [Plaintiff] Cranpark is another name for Hardrives. When we sold the company, they took the company name, not to use, they just wanted the company name. And we call it Hardrives Cranpark for legal reasons."

*Id.* at 235:17-20. Sabatine repeats this point in the following exchange:

> Q. So, when did Hardrives change its name to Cranpark?
>
> A. 2001.
>
> Q. But it's the same company, right?
>
> A. Yes.

*Id.* at 236:4-7.  Despite Plaintiff's urging, the Court finds that these statements merely support the fact that Plaintiff is Hardrives's successor.   Defendant concedes that Plaintiff is Hardrives's successor but correctly notes that Plaintiff only succeeded to what remained after its sale of all of its assets to McCourt. ECF Dkt. #225 at 5.  Defendant correctly points out that according to Sabatine's testimony at trial, Hardrives sold "everything," so no assets remained, including its claims of breach of contract or promissory estoppel.

At any time during the trial, Plaintiff could have offered into evidence the Asset Purchase Agreement ("APA") between Hardrives and McCourt or other proof contradicting a finding that Sabatine did not sell all of its assets including causes of action.  But Plaintiff admittedly took no such action. ECF Dkt. #222 at 19. Plaintiff now claims that the APA was "clear and unambiguous." *Id.*  Plaintiff states that "the assets were defined and particularized, and

Cranpark's claims against RGI were not sold to McCourt." *Id.* However, Plaintiff never offered the APA or any other evidence of such at trial, and, consequently, Plaintiff cannot now rely on it. The Court must consider Defendant's Rule 50(b) motion based solely on the evidence admitted at trial. *See Lujan*, 504 U.S. at 561; *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) ("directed verdict motions are made at trial and decided on evidence that has been admitted."). The evidence at trial concerning Plaintiff's standing is limited to Sabatine's testimony. That testimony indicates that Plaintiff does not own a redressable injury and, thus, it cannot invoke this Court's jurisdiction. "It is . . . a 'fundamental restriction on our authority' that '[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2663 (2013) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). Therefore, Plaintiff cannot bring a claim owned by another party; it must have a "judicially cognizable interest of [its] own." *Id.*

In opposition, Plaintiff cites *Lujan*, but focuses on the Court's use of the word "controverted." ECF Dkt. #222 at 2, n.2. The Supreme Court said in *Lujan* that "at the final stage, those facts (*if controverted*) must be 'supported adequately by the evidence adduced at trial." *Lujan*, 504 U.S. at 561 (emphasis added). Plaintiff contends that its standing was not controverted by Defendant and thus it is not limited by the evidence adduced at trial in order to prove standing.  ECF Dkt. #222 at 2, n.2.

However, contrary to Plaintiff's contentions, Defendant did in fact controvert Plaintiff's standing at trial. Sabatine testified that Hardrives had sold "everything" to McCourt. Trial Tr. at 330. Thereafter, Defendant orally moved for judgment as a matter of law on several grounds,

11

including Plaintiff's failure to supply sufficient evidence of standing. Trial Tr. at 641-42. Counsel for Defendant said, "there is not sufficient evidence on which a jury can conclude that Cranpark is the proper party." Trial Tr. at 641:14-16, ECF Dkt. #188. Defendant's counsel continued, "unless there is some evidence on which to believe that he retained the right to bring this cause of action by changing the name of Hardrives . . . we have a failure of proof and no reasonable jury could conclude that Cranpark is in possession of this contract right" *Id.* at 641:23-642:3.

Plaintiff counters by noting that Defendant did not explicitly mention standing or promissory estoppel in its Rule 50(a) motion. ECF Dkt. #222 at 15.  Plaintiff asserts that Defendant's Rule 50(a) motion was, in actuality, based on whether Cranpark was the real party in interest to the breach of contract cause of action. *Id.* However, contrary to Plaintiff's suggestion, "technical precision" is not required in pre-verdict motions for judgment as a matter of law. *See Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 361 (6th Cir. 2006). While counsel for Defendant did not use the exact words "constitutional standing" or "promissory estoppel," counsel for Defendant did state that "[t]here is no evidence on which a jury could reasonably find that Cranpark [Plaintiff] is the proper party to this case" and also that he "retained the right to bring this cause of action." Trial Tr. at 641-42. Defendant's words provided sufficient notice to Plaintiff of the case's deficiencies before the case was sent to jury and, thus, satisfied the purpose of a Rule 50(a) motion. When the Rule 50(a) motion's purpose has been satisfied, the "courts usually take a liberal view of what constitutes a pre-verdict motion sufficient to support a post-verdict motion." *Kusens*, 448 F.3d at 361. Further, the term "proper party" does not always refer to whether a party is the real party in interest. The United States Supreme Court and the

12

Sixth Circuit have used the term in reference to constitutional standing. *See, e.g., ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 686 (6th Cir. 2007), quoting *Flast v. Cohen*, 392 U.S. 83, 100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)("[o]ther cases involving non-similarly situated plaintiffs are typically irrelevant on the issue of standing, because standing reflects whether a 'particular person is a proper party to maintain the action."); *Southhaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1082 n.3 (6th Cir. 1983), quoting *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1149 (6th Cir. 1975)("the doctrine of standing poses the question whether a particular person is a proper party to litigate a given issue.").

Accordingly, the Court finds that Defendant properly made its motion for judgment as a matter of law with respect to constitutional standing. After Sabatine's testimony revealed a standing issue, Defendant alerted Plaintiff to the deficiencies in its case through a Rule 50(a) motion. Trial Tr. at 641-42. Plaintiff opted not to offer McCourt's APA or other evidence of standing into evidence. Instead, in defense of its constitutional standing, Plaintiff summarized Sabatine's testimony, saying that he testified to selling only "the construction contracts of the company" and that he "didn't sell all the rights of the company." *Id.* at 643. However, this was not Sabatine's testimony. As noted above, Sabatine testified that he sold the "entire company's assets." *Id.* at 330:4-6.

Plaintiff also contends that it previously established its constitutional standing.  ECF Dkt. #222 at 2. According to Plaintiff, its constitutional standing was established when Defendant conceded standing prior to trial and when the Court made an express finding of standing in a previous decision. Plaintiff argues that the parties and the Court are now bound by these

determinations. *Id.* However, despite Plaintiff's contentions, Defendant did not concede standing and the Court's prior decision did not establish Plaintiff's standing for all stages of the litigation.

Plaintiff refers to Defendant's brief in support of its motion for summary judgment where Defendant said that Plaintiff "became the successor to what was left of Hardrives." ECF Dkt. #122 at 12. However, Defendant's concession that Plaintiff is the successor to Hardrives is not the same as Defendant conceding that Plaintiff has standing to bring the instant claims. A chose in action—or the right to bring an action—is assignable. *Leber v. Buckeye Union Ins. Co.*, 128 Ohio App.3d 321, 332, 7089 N.E.2d 726 (6th Dist. 1997), citing *Crawford v. Chapman*, 17 Ohio 449, 1848 WL 126 (1848). As a result, if Hardrives's sold its equitable claims to McCourt in its asset sale, it does not matter that Plaintiff is Hardrives's successor since Plaintiff can only succeed to that which was Hardrives's after the sale. According to Sabatine's trial testimony, Hardrives sold "everything," to McCourt, which would include its promissory estoppel cause of action. *See* Trial Tr. at 330. "An unqualified assignment transfers to the assignee all the interest of the assignor in and to the thing assigned." *Leber*, 708 N.E.2d at 733, citing *Pancoast v. Ruffin* 1 Ohio 381, 1824 WL 23 (1824). Generally, an assignee "'stands in the shoes of the assignor * * * and succeeds to all the rights and remedies of the latter.'" Leber, 708 N.E.2d at 733, quoting *Inter Ins. Exchange v. Wagstaff*, 144 Ohio St. 457, 30 O.O. 44, 59 N.E.2d 373 (1945).

As to Plaintiff's contention that the Court previously found that Plaintiff had standing, the Court is not bound by such a decision. As previously noted, standing must be proven at each "successive stage[ ] of the litigation." *Lujan*, 504 U.S. at 561. When the Court considered Defendant's motion for summary judgment, the Court found that Plaintiff was the successor in interest to Hardrives's contract with Defendant and, therefore, had "standing to pursue its

14

claim." ECF Dkt. #131 at 2. This finding, however, was before Sabatine's testimony uncovered the issue of constitutional standing resulting from the Hardrives-McCourt asset sale. Thereafter, Plaintiff was obligated to prove that it had standing, but it failed to do. As a result, the Court grants Defendant's renewed motion for judgment as a matter of law on standing grounds.  ECF Dkt. #218.

### 2.      **Illegal Conduct**

Defendant also moves the Court for judgment as a matter of law based upon Sabatine's criminal convictions about which he testified at trial concerning bribing a public official in order to secure a meeting with the railroad to further the business between Hardrives and Defendant. ECF Dkt. #218 at 10-12.

The Court denies Defendant's Rule 50(b) motion as to this issue.  Defendant did not raise this issue as part of its Rule 50(a) motion before the Court.  ECF Dkt. #188 at 57-58.   Rule 50(a) of the Federal Rule of Civil Procedure allows a party to bring a motion for judgment as a matter of law "at any time before the case is submitted to the jury." Fed.R.Civ.P. 50(a)(2).  If the Court denies the motion and submits the case to the jury, "the movant may file a renewed motion for judgment as a matter of law."  Fed. R.Civ.P. 50(b).  However, it is a "well-established proposition that a post-trial motion for judgment as a matter of law is not available at anyone's request on an issue not brought before the court prior to submission of the case to the jury." *Sykes v. Anderson,* 625 F.3d 294, 304 (6th Cir. 2010), citing *Ford v. County of Grand Traverse,* 535 F.3d 483, 491 (6th Cir.2008) (internal quotation marks omitted); *see also* Fed.R.Civ.P. 50(b) (Rule 50(b) motion is a "renewed" Rule 50(a) motion).

### III.    MOTION FOR A NEW TRIAL

#### A.    STANDARD OF REVIEW

In contrast to judgment as a matter of law, "federal law governs the district court's decision to grant a new trial on the basis of the weight of the evidence." *Conte v. General Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000).   Rule 59 of the Federal Rules of Civil Procedure allows courts to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A).  Courts have interpreted this to mean that a new trial may be warranted when a jury has reached a "seriously erroneous" result as demonstrated by the following situations: (1) the verdict is against the weight of the evidence; (2) the damages award is excessive; or (3) the trial was influenced by prejudice or bias, or otherwise unfair to the moving party.  *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir.1996)(citations omitted). Although judges retain discretion to grant or deny the motion, they may not "reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because [they] feel that other results are more reasonable." *Davis v. Jellico Cmty. Hosp., Inc*., 912 F.2d 129, 132 (6th Cir.1990).  A jury verdict must be upheld so long as there is any competent and substantial evidence in the record to support it, even if contradictory evidence was presented. *Green v. Francis,* 705 F.2d 846, 849 (6th Cir. 1983).

Moreover, a motion for a new trial will not be granted unless the moving party suffered prejudice. *Tompkin v. Philip Morris USA, Inc.,* 362 F.3d 882, 891 (6th Cir. 2004) (citing *Erskine v. Consol. Rail Corp.,* 814 F.2d 266, 272 (6th Cir. 1987)) (holding that a new trial will not be granted on the ground that surprise evidence was admitted unless the moving party was

16

prejudiced). Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial. *Morales v. American Honda Motor Co., Inc.,* 151 F.3d 500, 514 (6th Cir. 1998).

### B.    ANALYSIS

In its motion for a new trial, Defendant asks that the verdict and the judgment be set aside and the case be retried because the jury's verdict in favor of Plaintiff on its promissory estoppel claim, including its award of $15.6 million in damages, is against the weight of the evidence and the jury reached a clearly erroneous result.  ECF Dkt. #220 at 1.

Since this Court has resolved Defendant's Renewed Motion for Judgment as Matter of Law, the Court DEFERS RULING on Defendant's Motion for a New Trial.  ECF Dkt. #219.  If the instant case is remanded, the Court will then address that Motion.  *See Szekeres v. CSX Transp. Inc*., 731 F.3d 592, 603 (6th Cir. 2013).

## IV.    MOTION FOR A HEARING

Plaintiff moves for an evidentiary hearing to resolve Defendant's Renewed Motion for Judgment as a Matter of Law and determine whether Defendant has standing.  ECF Dkt. #223. However, as previously noted, the Court is limited to the "evidence adduced at trial" when determining Defendant's motion. As a result, the Court sees no need for such a hearing and DENIES Plaintiff's Motion for a Hearing.  ECF Dkt. #223.

## V.    MOTION TO STRIKE DEFENDANT'S RENEWED MOTION BRIEFS

In Plaintiff's Motion to Strike Defendant's renewed motion briefs, Plaintiff again asserts that Defendant's Rule 50(a) motion was based on whether Plaintiff is the proper party in interest, not whether Plaintiff has constitutional standing or engaged in illegal conduct.  ECF Dkt. #227.

17

The law confines movants' post-verdict motions to the grounds advanced in their pre-trial motions. *See, e.g., Kutner Buick, Inc. v. American Motors Corp.*, 848 F.2d 614 (3d Cir. 1989). Accordingly, Plaintiff argues, Defendant exceeded the scope of its Rule 50(a) motion when it raised the additional issues of standing and illegal conduct in its Rule 50(b).

However, Plaintiff holds Defendant to too high of a standard. While Defendant never explicitly referenced "standing" and "promissory estoppel," Defendant's pre-trial motion clearly referenced Plaintiff's lack of standing as to the equitable claim. Defendant never used the exact word "standing," but "technical precision is not necessary" so long as Rule 50(a)'s purpose of "providing notice to the court and opposing counsel of any deficiencies in the opposing party's case prior to sending it to the jury" was satisfied. *Kusens*, 448 F.3d at 361. In its 50(a) motion, Defendant said that "there is [no] evidence . . . that [Plaintiff] retained the right to bring this case of action." Trial Tr. at 641. Although Defendant used general language, Defendant sufficiently alerted Plaintiff to the deficiencies in its case.

Accordingly, the Court DENIES Plaintiff's Motion to Strike Defendant's Renewed Motion Briefs.  ECF Dkt. #227.

## VI.  CONCLUSION

For the foregoing reasons, and based on all the filings and arguments of the parties, IT IS HEREBY ORDERED that:

1. Defendant Rogers Group, Inc.'s Renewed Motion for Judgment as a Matter of Law is GRANTED (ECF Dkt. #218);

2. A ruling on Defendant Rogers Group, Inc.'s Motion for a New Trial is DEFERRED (ECF Dkt. #219);

3. Plaintiff Cranpark, Inc.'s Motion for a Hearing is DENIED (ECF Dkt. #223);

4.  Plaintiff Cranpark, Inc.'s Motion to Strike Defendant's Renewed Motion Briefs is DENIED (ECF Dkt. #227); and

5.  Plaintiff's Motion to Alter/Amend Judgment is DENIED as MOOT (ECF Dkt. #201).


Dated: July 30, 2014                            */s/George J. Limbert*
                                                GEORGE J. LIMBERT
                                                U.S. MAGISTRATE JUDGE